J-S10014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN PATRICK MCCONNELL | : | |
| | : | |
| Appellant | : | No. 974 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 5, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0001255-2023

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: APRIL 23, 2025**

Sean Patrick McConnell appeals from the judgment of sentence of forty-eight hours to six months in prison imposed upon his convictions for driving under the influence ("DUI").  We affirm.

We glean the following facts from the certified record.  On February 17, 2023, Raeleigh Hundley was driving in the left lane of a highway when a red van quickly approached from behind.  Ms. Hundley moved to the right lane to allow the vehicle to pass.  However, the driver, later identified as Appellant, also moved into the right lane behind Ms. Hundley and followed very closely. When she took the next exit, Appellant continued to follow intently but eventually passed her using the right shoulder.  Ms. Hundley knew that Appellant's van was "very close" to her car while passing but was not sure whether it made contact.  *See* N.T. Trial, 2/1/24, at 39.

Appellant and Ms. Hundley arrived next to one another at a traffic light, and she saw through her window that Appellant was "saying a bunch of things" to her. *Id*. at 32. As she approached the light, she also took photos of Appellant's vehicle and license plate. When Ms. Hundley arrived at her destination, she noticed damage to her car that was not present earlier in the day. Her boyfriend was a passenger throughout the encounter with Appellant and described him as "hotheaded." *Id*. at 45. He claimed that when Appellant passed Ms. Hundley on the right shoulder, his car was close enough to hers to scratch it.

Ms. Hundley contacted the police and Officer Robert Powers of the Upper Allen Township Police Department responded within ten minutes of the accident, at around 4:18 p.m. He spoke to Ms. Hundley and inspected her vehicle, noting the damage. She also showed him the pictures of Appellant's van and license plate. Officer Powers identified Appellant as the owner and thereafter visited his home, which was five minutes from Ms. Hundley's location. The officer observed "fresh" scratches on Appellant's van with a paint color that matched Ms. Hundley's vehicle. *Id*. at 58. The officer did not see any signs of dirt or debris, or fading from the sun, which would have indicated that the damage was aged.

Appellant's sister, Mary Banzhoff, answered the door when Officer Powers approached. After she called for Appellant, he emerged from the basement and immediately became agitated upon seeing the officer.

Appellant asked "what false pretext" Officer Powers was at his house for, and "got close" and "touched" him. *Id*. at 59. The officer was wearing a microphone on his uniform, which captured the audio of this conversation.

After some heated discussion, Officer Powers brought Appellant outside to show him the damage to his van and recited Ms. Hundley's story. Appellant denied the allegations of causing damage or drinking, although the officer smelled a strong odor of alcohol on Appellant's breath. Appellant was irritated in answering the officer's questions and was slurring his speech. Officer Powers believed that Appellant was under the influence of alcohol. *Id*. at 67. Later in their conversation, Appellant admitted to drinking one beer after he arrived home around 4:00 p.m. *Id*. at 68-69.

Due to Appellant's aggressive demeanor, Officer Powers called Officer Christopher Desiderio for backup, as he expected to arrest Appellant. Officer Desiderio described Appellant's behavior as "argumentative, erratic, [and] loud." *Id*. at 108. Based on his observations and interactions with Appellant, Officer Desiderio concluded that Appellant was under the influence of alcohol "to a staggering degree."[1] *Id*. at 115. Appellant refused to participate in field sobriety tests, but after the officers arrested him, he consented to a blood draw. The results of the extraction revealed a blood-alcohol content ("BAC") of 0.124 percent at 5:49 p.m. *Id*. at 143.

---

[1] Officer Powers's motor vehicle recording device captured the interactions between Appellant and the officers.

Appellant was charged with DUI – general impairment, with an accident enhancement; DUI – high rate of alcohol; and accidents involving damage to attended vehicle or property. The matter proceeded to a jury trial in which the Commonwealth presented the testimony of Officer Powers, Officer Desiderio, Ms. Hudley, and her boyfriend. The Commonwealth also displayed photographs of the damage to both vehicles, and played the audio and video recordings from Officer Powers's uniform microphone and mobile video recorder.[2] It further called Ms. Banzhoff, who testified that Appellant appeared to be "happy" and "in a fairly good mood" when he arrived home around 4:00 p.m. that day. *Id*. at 93, 98. She attested that Appellant said he split a pitcher of beer with a friend while he was out, but did not appear to be intoxicated, and entered the basement after they talked. The defense did not offer any witnesses, and Appellant did not testify.

The jury found Appellant guilty of the two DUI charges but deadlocked on the offense of accidents involving damage to a vehicle. The court sentenced him as indicated hereinabove. Appellant thereafter filed a post-sentence motion, along with a supplemental motion, presenting challenges to the sufficiency and weight of the evidence, which the court denied. This timely

---

[2] The recordings were not included in the certified record. However, the parties do not rely upon their content in their arguments. Thus, their exclusion does not hinder our review.

- 4 -

appeal followed, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issue for our determination:

Whether the jury's verdict as to count [one] and count [two] is against the sufficiency and weight of the evidence when the Commonwealth was unable to provide evidence that proved [Appellant] was substantially impaired to the point he could not drive safely.

Appellant's brief at 6 (cleaned up).

Appellant purports to raise two challenges as one. *See* *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000) (explaining distinctions between a claim challenging sufficiency of evidence and a claim challenging weight of evidence). As disputes over the adequacy and the weight of the evidence are distinct complaints, we address them separately from what we can discern in Appellant's brief, starting with his sufficiency argument.

We begin with an overview of the applicable legal principles:

When reviewing a sufficiency claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Ransom*, 328 A.3d 1127, 1133-34 (Pa.Super. 2024)

(cleaned up).

Appellant was convicted of the following DUI offenses:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

. . . .

**(b) High rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

In order to establish that a defendant was incapable of driving safely, "it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." *Commonwealth v. Banks*, 253 A.3d 768, 775 (Pa.Super. 2021) (cleaned up). Substantial impairment may be demonstrated through "a diminution or enfeeblement in the ability to exercise judgment, to deliberate, or to react prudently to changing circumstances and conditions." *Id*. (cleaned up). In a prosecution for DUI, where a police officer has observed the defendant's

demeanor, he can render an opinion "as to the defendant's state of intoxication and ability to safely drive a vehicle." *Id*.

Appellant claims that the Commonwealth did not present sufficient evidence that Appellant "was substantially impaired to the point that he could not drive safely and under the influence of a high rate of alcohol at the time of driving." *See* Appellant's brief at 17 (unnecessary capitalization omitted). He maintains, without further explanation, that the evidence only proved that he was "in his basement for twenty-five minutes where alcohol was accessible to him" and that he only "admitted to consuming alcohol while at home." *Id*. He also points out that his sister attested that "he did not appear intoxicated[.]" *Id*.

We conclude that the evidence was sufficient to sustain Appellant's DUI convictions. The responding officers questioned Appellant shortly after Ms. Hundley's report, and they testified that based on their observations of him, they believed Appellant was under the influence of alcohol. *See* N.T. Trial, 2/1/24, at 67, 115. Ms. Hundley and her boyfriend also attested to Appellant's erratic driving and angry demeanor. *Id*. at 32, 45. Additionally, Appellant's sister testified that he said he drank beer before driving home. *Id*. at 93. Thus, the record supports the jury's determination that Appellant was so intoxicated that he could not safely operate a vehicle at the time of his interaction with Ms. Hundley. *See Banks*, 253 A.3d at 776-77 (concluding that the evidence was sufficient to sustain Banks's conviction for DUI – general

impairment where a police officer testified that he believed Banks was intoxicated, and witnesses testified to Banks's aggressive driving). Further, the record demonstrates that Appellant was intoxicated at a high rate of alcohol where his BAC was 0.124 percent at 5:49 p.m., *i.e.* within two hours of operating his vehicle. ***See*** N.T. Trial, 2/1/24, at 68, 143. No relief is due.

Appellant's alternative contention is that the guilty verdicts were against the weight of the evidence. Without further explanation, he maintains that his sister attested that he did not appear to be visibly intoxicated when he arrived home, and that he only consumed alcohol in his basement for twenty-five minutes. ***See*** Appellant's brief at 17. We analyze this argument thusly:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Person***, 325 A.3d 823, 836 (Pa.Super. 2024).

In concluding that the weight of the evidence did not justify a new trial, the court concluded as follows:

> [The court] observed the Commonwealth's witnesses, heard and watched the video clips of Appellant's interactions with police, and saw the photos of the vehicles and found the jury's verdicts in accord with the evidence presented. It was a given that it was possible that Appellant consumed alcohol in the approximately half-hour he was home outside his sister's presence to incur a BAC

of 0.124 percent, but based on the evidence, highly unlikely and adverse to common sense. . . . The verdicts were neither shocking nor unjust.

Trial Court Opinion, 9/12/24, at 11 (emphasis omitted).

The court's determination is supported by the evidence of record. The jury was free to believe the responding officers, Ms. Hudley, and her boyfriend that Appellant appeared intoxicated over the testimony of his sister. Moreover, while claiming he did not seem inebriated, his sister also testified to Appellant's admitting to splitting a pitcher of beer before driving home. Thus, we have no cause to disturb the court's sound reasoning.

In sum, Appellant has not demonstrated that the evidence was insufficient to support his DUI convictions, or that the weight of the evidence was against his verdicts. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/23/2025